The next case up for argument this morning is Dubnow v. McDonough, 21-1045. Good morning Mr. Lloyd. Good morning. May it please the court. Congress set up a comprehensive scheme. Mr. Sherlock, can I ask you a question? Do you agree that if we reverse this case that we have to remand to the principal deputy? Is that what we'd have to do? We'd have to clearly articulate what the standard is by which the principal deputy should review the board's decision? I agree, but the other argument that we make is in this instance, I think that articulation of the standard is important and you would remand because that would be the action that would be taken. But in this case, because the standard of care was the basis for the board's decision and there was no contrary evidence concerning the standard of care, I think it's appropriate. This case has been going on for five years. This man lost his privileges with an unblemished record. To tell them in this instance, here's what you need to do. That's my second question. On the standard of care, I understand your argument. At least the way I understand your argument to be is if the principal deputy makes a decision that is standardless, then it's arbitrary. If he just decides on the facts to say bad things happened here and I'm making my decision based on what I think are the bad result here, it's just an arbitrary decision because it's standardless. So you, I think, draw the standard to the standard of care. Well, I think we make two distinct arguments, Your Honor, so let me see if I can break those out for you. The first is that the review of the DAB's decision, the Disciplinary Appeals Board's decision. Congress gave the DAB exclusive jurisdiction to review adverse personnel actions when, as here, they involve a question of professional conduct or competence. There's a separate section of the statute that deals with throwing a chair or that kind of thing. So in this instance, there's exclusive jurisdiction. The Secretary's review of that decision is capital, right? So it either has to be unlawful or it has to be clearly contrary to the evidence. So what the Secretary did not do here, there's been no contention that the DAB's decision was unlawful. Right. So we're focused on clearly contrary to the evidence. What we're saying is that's a standard of review. And in this instance, because the DAB based its decision, a decision reinstating Dr. Dubnow, because it said his judgment call, his discretionary judgment call on the diversion, met the standard of care. So the way I'd answer Your Honor's question is there may be instances where the standard of care is not implicated. For example, if there's a policy and the record shows there's a policy that if this child had been brought in on foot by somebody, there's a policy that says you have to treat that child. So if that happened and the doctor said, oh, you know, I think that there may be trauma here, go run over to Lake Forest Hospital. And the DAB said, you know, we think that that met the standard of care because infants don't go into cardiac arrest, et cetera. That decision would be clearly contrary to the evidence because there's a policy that takes discretion off the table. So when discretion is on the table, then it has to be benchmarked to the standard of care. That's what professional judgment means. The government makes the argument that you waived that argument. Did you waive that argument in the district court? We did not waive that argument in the district court. And I would point the court to two specific instances, although there are several in our brief. It's at document 42. So concerning the standard of care, if the court looks at pages 29, 30, and 31. So on page 29, we said the DAB was confident in Dr. Duno's ability to manage a pediatric code. Importantly, the agency's self-selected panel of physician experts held, underlined the community standard of care was met. After reviewing the evidence and the testimony, it agreed with his medical judgment. The PDUC's decision does not provide any relevant evidence such that a reasonable mind might accept the conclusion as adequate when the conclusion is supported only by one sentence that the evidence was clearly contrary to the evidence. And so there's a discussion at that section about the standard of care. They also say we waived on the standard of review. And I point the court to pages 3 and 4. They take issue with our citation to the Sabu case. There we said that under section 7462D2, the instruction for the secretary's appellate standard of review is that the decision must be accepted unless the decision was clearly contrary to the evidence. Thus, the standard does not entitle the appellate court, here the secretary, to reverse the DAB simply because it weighs evidence differently and would decide the case differently. Rather, the decision will apply only if reversed, only be reversed, excuse me, if it's implausible in light of the entire record. So I believe that we did preserve both of those issues for this court's review. Section 7462D, and you just read from it, does provide that the secretary's standard of review is whether or not the board's decision was clearly contrary to the evidence. But section 7462F2 provides what judicial review is. That's correct. And the judicial review is not whether or not it was clearly contrary. The judicial review is whether or not it was arbitrary, capricious, or an abuse of discretion. That is correct. It seems like you're asking this court to apply the clearly contrary to evidence standard, but that's not what the statute provides. So let me clarify that then, Your Honor. Please. The decision of the secretary is arbitrary and capricious if the secretary doesn't apply the standard in D2. So this court can review to see, did the secretary do what Congress limited the secretary to doing? And the way you can tell that is, is there any engagement with the evidence? For example, is there any engagement about compliance with the standard of care? Is there any engagement with the fact that there was no pediatric intensivist or pediatrician on staff? Is there any engagement with the fact that the treatment judgment of these two doctors who were there making the decision with limited evidence was that it would be a better treatment outcome? Is there any engagement with that evidence? Is there any engagement with Dr. Maldonado, who recommended the termination? Is there any engagement with his statement, asked under cross-examination, did the diversion violate the standard of care? And he said no. Is there any engagement with that evidence? And so I want to emphasize, it's not how long this is. In my example to Judge Kirsch, if they said that he should be reinstated because his conduct met the standard of care, but he violated a clear policy, that could be a one-sentence secretary review. Here, we have not just a quantity of evidence, we have a deep quality of evidence. They heard testimony from witnesses. They judged their credibility. And the secretary brushed all of that aside and adopted his own standard. He engaged in policymaking on the fly in this case. He said, as long as there is minimal capacity, training, and equipment, there was no need, he said. And therefore, since there was no need to divert, the diversion was unjustified. Unpacking that, that's all about the standard of care. The charge here, Congress provided a multi-step process here. And the first step in the process is the physician who is subject to discipline must be told, must be given the charge of what they've done wrong, what they've allegedly done wrong. What's the charge here? Charge one, inappropriate diversion. Not violating X policy. Inappropriate diversion. And the record is clear, and the secretary says nothing about this, that individual diversion decisions, again, in contrast to somebody walking in, individual diversion decisions are left to the discretion of physicians. So the only way in this case, because of the charge that was made, the only way to hold that the DAB's decision was clearly contrary to the evidence, is to engage with the evidence. And to give a reasoned explanation so that this court can review that decision and say why that decision was a correct application of the standards. So that's a bit of a long explanation, Your Honor, but I think the point is not to make this court step in and do the clearly contrary to the evidence review and say, we would have come up with that differently. It's to ensure that the clearly contrary to the evidence standard was actually met rather than just recited. And here it was just recited. You have a new standard that was articulated and then applied retroactively. Because let's be clear. Why can't we read P. Dish's analysis that the doctor's discretion was arbitrary or the doctor's discretion was wrong given all the factors that they identified? Namely, that they serve family members, they were staffed, he was trained in it. Why can't we read, under the very deferential standard that we have, that analysis as just directly contrary to the doctor's exercise of discretion? Well, because the review that the Secretary has is not a rebalancing of the evidence or a decision that he would make differently. Congress circumscribed his authority severely. And in this case, his failure to even engage on the standard of review, this court's not allowed to make up, and I'm not suggesting you would make up, but this court's not allowed to backfill for the Secretary. Congress provided for this court's review to ensure that there's a fair process. This was a process failure. If the Secretary had said, you know, I just don't like Dr. Dubnow's tie. I don't like the fact that he wears green slacks. The court would not have a problem saying that, you know, there was an abuse of discretion here, it was arbitrary and capricious. Reciting the standard, but not applying the standard. And that's why I think the Sabu case is helpful, because, I mean, the last look, and kind of the 28-J review, and didn't find anything to 28-J for the court. There are only nine federal appellate decisions, as the court may know. And part of the reason is, it's very rare for the DAB and the Secretary to disagree. But the reason why the Sabu case, I think, is helpful, although it's a district court case, is that it engaged on the standard. And the court said, if there's no reasoned explanation, much as in, you know, Social Security disability cases or other cases where, yes, this court's review of the reviewer is deferential. But the reviewer has to do the job that Congress gave and can't stray outside of that. Mr. Lloyd, under 7462F2, do we have to review this case under the arbitrary capricious standard under prong A, or can we review it under prong B, obtained without procedures required by law, rule, or regulation having been followed? I ask that question because you mentioned that this is a process failure. Yes. That would seem to me to be a prong B review as opposed to a prong A review, but am I wrong on that? No, I don't think that you're wrong. I think, given that this is borrowed from the APA, we all have the lure of, I think these standards kind of mesh into one another. I don't know that they're completely clearly delineated. The reason I focused on arbitrary and capricious is, if Congress gave you a standard to follow and you didn't follow it, that seems to be quintessential standardless decision making and, therefore, arbitrary and capricious. But I agree that B would provide a route to reversal as well. You're in your rebuttal time. Thank you, Your Honor. Thank you, Mr. Lloyd. Thank you. Mr. Hartzler? May it please the Court, Counsel? I think the standard of care in this case is a bit of a red herring. The standard of care we typically think about is something that applies in a medical malpractice case where we're questioning, did a doctor commit a tort against a patient or not? In this case, the charge against the appellant was not that he violated the standard of care. The charge was that he inappropriately diverted the ambulance. So what is that? If it's not standard of care, what is it? Well, what it means is that this is a hospital that serves not just veterans but military families, including infants of members of the military at the Great Lakes Naval Station in northern Chicago. And so this is a hospital where the doctors are trained in pediatric resuscitation. The staff is trained in pediatric resuscitation. They provide all of the equipment for pediatric resuscitation. And the VA is entitled to expect more than simply non-tortious conduct from its doctors, certainly from the head of the emergency department. The VA is entitled to expect more. But how does that, even if that's true, how does that get you to clearly contrary to the evidence? And by the way, I just want to make sure, your brief, the vast majority of your brief, at least the way I read it, focuses on the district court's opinion. But you agree that we're not reviewing the district court's opinion here. We're reviewing the secretary's decision like we would in a Social Security case, right? Well, I think formally this court is reviewing the district court's opinion. Right. I mean, if we reverse or remand, we're reversing the district court. I get that. But just like a Social Security case, we're reviewing basically the administrative law judge's decision. There certainly is no deference to district court in this case. I would agree with that. And the question before this court is the same question that was before the district court, which is, was the agency's ultimate decision arbitrary and capricious? You know, here the undersecretary with the final reviewing authority within the VA explained why he found the board's decision to be clearly contrary to evidence. And he laid it out very plainly. This is a hospital that serves military families. It's staffed to handle pediatric cases. It's equipped to handle pediatric cases. It's specifically equipped to handle pediatric process hesitations. The doctor, the appellant, and his colleagues were all staffed to do this, all trained to do this, all certified to do this. And on that basis, he found that the board version. But how is that? I guess what I'm struggling with is how is that clearly contrary to the evidence? I think all of those facts that you just recited, the doctor would agree with you. I don't think there would be any dispute on the facts. So it just seems to me how do we get past, you know, if one, if the board takes the facts and reviews them under the standard of standard of care and says the doctor met the standard of care, how do we get beyond the secretary taking those same facts and just saying I disagree with the board's decision based on the facts? You see what I'm struggling with? How do we get past clearly contrary to the evidence? So the board did spend a lot of time talking about the standard of care. There's no question about that. On page 14 of the board's decision, the board also engaged with the actual charge, which was was the ambulance diversion inappropriate? And the board went through its analysis there and said, yes, they were trained, yes, they had the equipment, but they had never done it before. And that was the basis on which the board found that the diversion was inappropriate. And so when you look at the undersecretary's response to that, all of a sudden there doesn't seem to be much of an imbalance. We have the undersecretary saying, yes, trained, staffed, equipped. This is the purpose of this military hospital. This isn't a veterans hospital. This is the James A. Lovell Federal Health Care Center that serves military families and veterans. This is what we're here to do. And when we staff a hospital with doctors and nurses who are trained to treat infants, when we provide all the equipment necessary to treat an infant, we don't expect that infants are going to be sent five miles down the road to a different hospital. Mr. Hertzberg, what would you say the secretary concluded with regard to the judgment called by the DAB? What did he do besides disagree? He found that the – I understand. Where did he point to the error of the DAB? You seem to speak to policy. Well, I think the policy is implicit in the undersecretary's ruling where he lays out we have the ability to do this. We're staffed to do it. We're trained to do it. This is what we're here for, military families. So is the secretary's position that that wasn't considered by the DAB? I'm trying to remember. I don't think so. I think the undersecretary's position is any contrary finding is clearly contrary to the evidence, given the undisputed evidence that this is what the hospital was trained to do, staffed to do, equipped to do. So, in effect, the secretary is saying any diversion when there's a hospital equipped, as you suggest this is, would automatically violate the policy. There was testimony in front of the board that there are situations where diversions are acceptable. There was also testimony from the director of the facility who testified quite the opposite in this case. I mean, he said we have all the equipment. We have all the nursing staff trained to do this. We have the room available. Help me here. I don't understand how we're not capable of doing pediatric cases. There was a very strong disagreement from the director of the facility itself that there was discretion to divert an infant and pediatric arrest given that the hospital was trained and staffed to do just that. Mr. Hartzler, if we were to reverse here, is there any room for us to reverse, or do you believe that if we were to reverse we would have to remand to the secretary to apply the clearly contrary to the evidence standard? Or is there any room for us to do that, as Mr. Lloyd suggests, that we can just apply the standard ourselves and instead of remanding to the secretary we can just reverse the decision? I think the appropriate outcome is affirming, but if the court were to reverse the appropriate outcome would be a remand to the undersecretary to articulate further the way in which the board's decision was clearly contrary to the evidence. On the standard of care question, is it your position that the board didn't need or PEDISH didn't need to consider it at all or that they considered it and it didn't factor in? I don't think it's relevant to the PEDISH's inquiry. The charge was not violating the standard of care.  To the extent that the board grounded its discretionary or diversion ruling on the standard of care, why isn't that something that the PEDISH should have at least acknowledged or taken on under the standard that it needed to apply? Well, I think the case law teaches us that an agency decision maker doesn't need to engage with every possible piece of evidence. And so given that the charge didn't have to do with the standard of care, I think it was reasonable for the undersecretary to focus on the charge and not on the additional findings of the disciplinary appeals board. Because it does seem that the board's decision, I know you pointed to that language on page 14, but it does seem that the board grounded its decision on all of the charges based on the standard of care. Is Your Honor referring to all five of the charges against the appellant? We could focus, yes, but we could focus just on the one that it was reversed on. So I'm not asking you to comment on the ones that aren't before us today. But it did seem that the standard of care was underlying the board's decision. Yeah, well that's why I pointed to the language on page 14 where I think the board does get at the ultimate charge. If we disagree with that, if we think that the standard of care was underlying the board's decisions, do we reverse and send it back for clarification? I think there would be room to find that implicit in the undersecretary's ruling is that the issues identified by the undersecretary supersede the standard of care issue. I wanted to mention a couple of points. Judge Kirsch mentioned there's three ways in which VA's decision could be reversed in a case like this. One is the arbitrary and capricious standard, which tends to be the focus. The second is if a decision is obtained without following the procedures required by law. And I wanted to mention that that is an argument that the appellant has waived on appeal, not at the district court, because that is an argument that the appellant made at the district court stage in saying that the procedures required by law were not followed. The district court described that as hard to take seriously. That argument didn't appear in any of the appellate briefs and appears for the first time today. The third standard or the third method of review under which this court could reverse is if the decision was unsupported by substantial evidence. We tend to focus on arbitrary and capricious, but I think in most situations it's probably both or neither. So if the panel has no further questions, we would ask the district court's ruling be affirmed. Thank you. Mr. Lloyd, you have a few minutes left for rebuttal. Let me just address briefly the waiver issue. We focused our briefs, as counsel correctly says, on arbitrary, capricious, and substantial evidence. Really, just responding to Judge Kershaw's question, is that an alternative ground? I think those bleed into each other. I don't think there's any prejudice to the government if the court decided to go off on that ground. Counsel said that the reason that the DAD decided that Dr. Doudno acted appropriately was that they'd never done this before. That was part of the reason. That was not the only reason. I didn't hear, and it hardly ever appears in their briefs, the word trauma. There is substantial evidence in the record. Substantial evidence. On pages that counsel didn't refer to. Not that they weren't minimally capable. Judge Kersh is correct. In fact, those facts were stipulated to. What was not stipulated to, and what the board found, for example, Dr. Martin, who was also there, testified in this particular case, given the information we had, the best place was a trauma center. Why a trauma center? Because infants don't have heart attacks. It was secondary to trauma. That was the judgment that they made in that circumstance. And if the court turns, again, I appreciate that the other charges are not before the court, but the evidence in the record is before the court. And as an example, at A33 in our appendix, page 16 of the DAB's decision, it says about diversion, about the policy, for example, trauma patients should go to the nearest trauma center. This is a case in which Dr. Dubnow and his colleagues had the minimal capability to do something, but realized that the best treatment outcome was to send to a trauma center, given that it was nearby and given that it was a level two trauma center. Council also said that this case is not about the standard of care because the charge was an inappropriate diversion. I'm sorry, Your Honor. There is absolutely no way doctrinally to tell a doctor you acted inappropriately and then to take standard of care off the table, unless you've got a clear policy in place that removes discretion. Treatment decisions, diversion decisions, were left to individual discretion, not just if the ER was on fire, not just if the ER was full, not just if everyone was gone in every case. Dr. Dubnow met the standard of care. The DAB correctly found that. The secretary did not apply the clearly contrary to the evidence standard. We'd ask that the court reverse. Thank you, Mr. Lloyd. The case will be taken under advisement.